0R16

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

Thomas Carter, et als
*Plaintiffs*

vs. C.A. No. 04 CV-013 ML

Jay Lindgren, et als
*Defendants.*

AFFIDAVIT OF THOMAS CARTER

Thomas Carter, on oath, depose and say:

1. At no time did I or my wife Joy Carter in any way abuse or neglect any of our children. At all times we have contested such allegations in Family Court or Superior Court and ultimately prevailed in findings that there was no such abuse.

2. I believe that numerous agents and employees of DCYF, acting in concert at times with the Charlestown Police Department, have set about a course of harassing and intimidating me and my family.

3. Allegations by DCYF that Joy had intentionally crashed her vehicle, which apparently formed a partial basis for the removal of Caleb, are false.

4. The allegations contained in DCYF's documents are either total falsehoods or extreme exaggerations.

5. Numerous and repeated instances of this conduct have occurred over time, some of which is detailed in the following specific instances with regard to specific named DCYF employees:

Marta Branstromskelding. Defendant Branstromskelding interviewed me in late October 1999 in connection with an attempt to re-open an allegation of sexual molestation against me. The allegations had been previously unfounded by

DCYF. Branstromskelding's tone and attitude were sarcastic during the interview, but at the conclusion of the interview she advised my attorney that there was nothing new and that she would not be "indicating" the allegations against me. Contrary to that statement, the allegations were "indicated" and this led to the taking of Cassidy from our home.

Edward O'Donnell. Contrary to his claimed lack of memory or knowledge at his deposition, Defendant O'Donnell met with me in December 1999 after the old allegations against me were re-opened and "indicated." Without any additional information against me, O'Donnell participated in "reopening" the investigation and approved the result of the investigation. This action led directly to the removal of Cassidy from our home.

The removal of Cassidy. At approximately 9:00 pm on January 23, 2001 C.P.I. Paul Ventura arrived at our home. I answered the door. He stated that he was there to remove Cassidy from the home. I asked for a Family Court order and Ventura stated that he did not need one. I advised him that without a warrant or a Family Court order, he would not be permitted into the home. A Charlestown Police Officer then pushed into the house and stated that he did not need a warrant or order. The officer threatened to arrest me. The Officers then went through the house and found Joy in a bedroom with Cassidy. Ventura stated that between the two of you there are four children in DCYF custody, so what made us think we could be allowed to keep this one? Ventura stated that he had been ordered to take the child. He approached Joy, grabbed for Cassidy, and removed her from Joy's arms.

Suzanne Zuffoletti submitted documents to the Family Court stating reasons for removal of Cassidy, but CPI Ventura affirmed that she was healthy and well-cared for at the time he removed her from the home, and this was the finding of the Family Court magistrate when Cassidy was returned to us.

Cheryl Csisar. Throughout our contact with Defendant Csisar repeatedly attempted to get Joy to break up with me or divorce me. She warned Joy not to have a child with me. She attempted to extort me into admitting to sexual molestation of my son while that charge was pending against me in Superior Court. I refused and was found not guilty. When Joy engaged private counsel, Csisar and defendant Maureen Egan became irate and criticized the attorney for repeatedly reminding them of Joy's legal rights.

During the period when Caleb was placed with Joy's relatives (Joe and Karen Thibeadeau), Csisar falsely informed them that Joy was not in compliance with the terms of her case plan and advised them that she was taking steps to terminate Joy's parental rights to Caleb, apparently to induce the Thibeadeas to take steps to adopt Caleb. Csisar's conduct in this regard caused tremendous difficulty within Joy's family.

Physical harm to children in DCYF custody. When Cassidy was in DCYF placement, her fingernails were cut so close that her fingers became scabbed over and infected. Her umbilical chord was handled improperly by the home where she was placed resulting in an infection.

Intrusive examination of children. In October 2004 CPI Denegan was assigned to investigate an alleged domestic disturbance reported by the Charlestown Police.

He insisted that he be permitted to examine the children in the nude for possible signs of abuse. There being no evidence of abuse, Joy denied the request, whereupon Denegan threatened that they would be examined one way or another. Ultimately Joy agreed only if our family physician (Dr. Paul Mann) was permitted to examine the children. There was no evidence of abuse.

Subscribed and sworn to on pain and penalty of perjury this 22 day of April 2006

Thomas G Carter

Providence, Sc.

On April 22, 2006 the affiant appeared before me
and swore to the foregoing on pain and penalty of perjury.

Notary Public/Justice of the Peace

My Commission Expires: December 17, 2006

**CERTIFICATION**

I hereby certify that the within document was served upon all parties hereto by mailing a copy, postage prepaid, to the address of their counsel of record as follows:

Attorney Richard B. Woolley
Civil Division
Department of Attorney General
150 S. Main St.
Providence, RI 02903

Thomas M. Dickinson
1312 Atwood Ave.
Johnston, RI 02919
401-490-8083

Date: April 23, 2006