**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

Thomas Carter, et als
*Plaintiffs*

vs. C.A. No. 04 CV-013 ML

Jay Lindgren, et als
*Defendants.*

**EXHIBITS TO PLAINTIFF'S RESPONSE TO DEFENDANTS' REVISED AND RESUBMITTED STATEMENT OF UNDISPUTED FACTS**
**(redacted pursuant to Judicial Conference Privacy Policy)**

1. Plaintiffs' Original Statement of Disputed and Undisputed Facts (filed March 30, 2006);

2. Affidavit of Thomas Carter (filed April 23, 2006)

3. Decision of Family Court Magistrate DiMuro (with exhibit) appended to Defendants' original Statement of Undisputed Facts.

CERTIFICATION

I hereby certify that the within Exhibits were served upon counsel for all defendants by emailing a copy to the address of their counsel of record:

Richard Woolley
Rwolley@riag.ri.gov

/s/ Thomas More Dickinson
Thomas More Dickinson (R.I. S. Ct. No. 2520)
1312 Atwood Ave.
Johnston, RI 02919
Tel. 401-490-8083
Fax 401-942-4918
Email: tmd@appealRI.com

Date: September 7, 2006

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

Thomas Carter, et als
*Plaintiffs*

vs. C.A. No. 04 CV-013 ML

Jay Lindgren, et als
*Defendants*.

**PLAINTIFFS' STATEMENT OF DISPUTED AND UNDISPUTED FACTS**

Now come the Plaintiffs, pursuant to L.R. Cv 56[1], and states that the following facts are disputed:

1. Whether, at the time that DCYF took custody of Caleb in September 1999, there was any factual or legal basis for so doing.

2. Whether, as alleged by the Defendants, Caleb was residing with Thomas Carter at the time that DCYF took custody of Caleb.

3. Whether, after DCYF made a specific determination in 1999 that allegations of sexual molestation against Thomas Carter were "unfounded," there was any justification for re-opening said determination and determining that said allegations were "founded."

**STATEMENT OF UNDISPUTED FACTS**

Now come the Plaintiffs, pursuant to L.R. 56, and state that the following facts are undisputed:

1. The ongoing custody by DCYF of Caleb and Cassidy, which extended into August and June of 2001, respectively, constituted ongoing deprivation of the

[1] Plaintiffs have filed a motion to strike the Defendants' Statement of Undisputed Facts because it includes numerous exhibits that do not satisfy the authentication and affidavit requirements of Rule 56(e).

right to family integrity such that any cause of action by the parents accrued no sooner than August 2001.

2. The minority status of Caleb and Cassidy means that their causes of action do not accrue until the point in the future when each one reaches the age of majority under Rhode Island law.

3. At the time that DCYF took custody of Cassidy, there was any factual or legal basis for so doing. (See decision of Magistrate DiMuro, Exhibit H to Defendants' Statement of Undisputed Facts).

PLAINTIFFS
By their Attorney:

Thomas M. Dickinson
1312 Atwood Ave.
Johnston, RI 02919
Tel. 401-490-8083
Fax 401-942-4918

Date: March 30, 2006

**CERTIFICATION**

I hereby certify that the within document was served upon all parties hereto by mailing a copy, postage prepaid, to the address of their counsel of record as follows:

Attorney Richard B. Woolley
Civil Division
Department of Attorney General
150 S. Main St.
Providence, RI 02903

Thomas M. Dickinson
1312 Atwood Ave.
Johnston, RI 02919
401-490-8083

Date: March 30, 2006

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

Thomas Carter, et als
*Plaintiffs*

vs. C.A. No. 04 CV-013 ML

Jay Lindgren, et als
*Defendants*.

AFFIDAVIT OF THOMAS CARTER

Thomas Carter, on oath, depose and say:

1. At no time did I or my wife Joy Carter in any way abuse or neglect any of our children. At all times we have contested such allegations in Family Court or Superior Court and ultimately prevailed in findings that there was no such abuse.

2. I believe that numerous agents and employees of DCYF, acting in concert at times with the Charlestown Police Department, have set about a course of harassing and intimidating me and my family.

3. Allegations by DCYF that Joy had intentionally crashed her vehicle, which apparently formed a partial basis for the removal of Caleb, are false.

4. The allegations contained in DCYF's documents are either total falsehoods or extreme exaggerations.

5. Numerous and repeated instances of this conduct have occurred over time, some of which is detailed in the following specific instances with regard to specific named DCYF employees:

   Marta Branstromskelding. Defendant Branstromskelding interviewed me in late October 1999 in connection with an attempt to re-open an allegation of sexual molestation against me. The allegations had been previously unfounded by

DCYF. Branstromskelding's tone and attitude were sarcastic during the interview, but at the conclusion of the interview she advised my attorney that there was nothing new and that she would not be "indicating" the allegations against me. Contrary to that statement, the allegations were "indicated" and this led to the taking of Cassidy from our home.

Edward O'Donnell. Contrary to his claimed lack of memory or knowledge at his deposition, Defendant O'Donnell met with me in December 1999 after the old allegations against me were re-opened and "indicated." Without any additional information against me, O'Donnell participated in "reopening" the investigation and approved the result of the investigation. This action led directly to the removal of Cassidy from our home.

The removal of Cassidy. At approximately 9:00 pm on January 23, 2001 C.P.I. Paul Ventura arrived at our home. I answered the door. He stated that he was there to remove Cassidy from the home. I asked for a Family Court order and Ventura stated that he did not need one. I advised him that without a warrant or a Family Court order, he would not be permitted into the home. A Charlestown Police Officer then pushed into the house and stated that he did not need a warrant or order. The officer threatened to arrest me. The Officers then went through the house and found Joy in a bedroom with Cassidy. Ventura stated that between the two of you there are four children in DCYF custody, so what made us think we could be allowed to keep this one? Ventura stated that he had been ordered to take the child. He approached Joy, grabbed for Cassidy, and removed her from Joy's arms.

Suzanne Zuffoletti submitted documents to the Family Court stating reasons for removal of Cassidy, but CPI Ventura affirmed that she was healthy and well-cared for at the time he removed her from the home, and this was the finding of the Family Court magistrate when Cassidy was returned to us.

Cheryl Csisar. Throughout our contact with Defendant Csisar repeatedly attempted to get Joy to break up with me or divorce me. She warned Joy not to have a child with me. She attempted to extort me into admitting to sexual molestation of my son while that charge was pending against me in Superior Court. I refused and was found not guilty. When Joy engaged private counsel, Csisar and defendant Maureen Egan became irate and criticized the attorney for repeatedly reminding them of Joy's legal rights.

During the period when Caleb was placed with Joy's relatives (Joe and Karen Thibeadeau), Csisar falsely informed them that Joy was not in compliance with the terms of her case plan and advised them that she was taking steps to terminate Joy's parental rights to Caleb, apparently to induce the Thibeadeas to take steps to adopt Caleb. Csisar's conduct in this regard caused tremendous difficulty within Joy's family.

Physical harm to children in DCYF custody. When Cassidy was in DCYF placement, her fingernails were cut so close that her fingers became scabbed over and infected. Her umbilical chord was handled improperly by the home where she was placed resulting in an infection.

Intrusive examination of children. In October 2004 CPI Denegan was assigned to investigate an alleged domestic disturbance reported by the Charlestown Police.

He insisted that he be permitted to examine the children in the nude for possible signs of abuse. There being no evidence of abuse, Joy denied the request, whereupon Denegan threatened that they would be examined one way or another. Ultimately Joy agreed only if our family physician (Dr. Paul Mann) was permitted to examine the children. There was no evidence of abuse.

Subscribed and sworn to on pain and penalty of perjury this 22 day of April 2006

Thomas G. Carter

Providence, Sc.

On April 22, 2006 the affiant appeared before me
and swore to the foregoing on pain and penalty of perjury.

Notary Public/Justice of the Peace

My Commission Expires: December 17, 2006

**CERTIFICATION**

I hereby certify that the within document was served upon all parties hereto by mailing a copy, postage prepaid, to the address of their counsel of record as follows:

Attorney Richard B. Woolley
Civil Division
Department of Attorney General
150 S. Main St.
Providence, RI 02903

Thomas M. Dickinson
1312 Atwood Ave.
Johnston, RI 02919
401-490-8083

Date: April 23, 2006

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC. FAMILY COURT

IN THE MATTER OF:
CASSIDY [redacted]

F.C. NO. 1999-01910-02

# DECISION

1. There is no evidence to demonstrate neglect of Cassidy [redacted] by father, Thomas Carter, or Joy Carter. In fact, all reports indicate a healthy and well-cared-for child.

2. That during the course of these hearings a Superior Court jury has, in fact, found Thomas Carter not guilty of the two counts of child molestation (this Court being cognizant of the different burdens of proof in criminal and civil matters).

3. That the reason for the removal of the child was in large part the pending criminal charges and the indicated (previously unfounded on the same allegations) case on father.

4. Joy Carter has, in fact, unlimited and unsupervised visitation with Cassidy Carter.

5. The Court also considered the recommendation of Court Appointed Guardian, Francis S. Holbrook, as Guardian for Cassidy [redacted] hat the child,

Cassidy [redacted] be placed with her biological parents, Joy and Thomas Carter, in the home.

The report of Jeanette Froncillo, M.A. indicates that there is no reason why Thomas would not be able to correctly care for the child and the favorable reports of South County Community Action and Dr. Berman were also considered by the Court.

The Court finds that there do **not** exist facts and circumstances, based upon as accurate and reliable information as possible, that would justify a reasonable person to suspect that a child is abused or neglected.

Parents admit to allegations of dependency and the child, Cassidy [redacted]s committed to DCYF custody. The child, Cassidy [redacted], is to be placed with her parents, Joy and Thomas Carter, at home. That as a condition of this placement, counseling will continue with Jeanette Froncillo, M.A. and Darlene Spears of South County Community action. That DCYF continue to monitor the placement, including unannounced visits, and parents to cooperate with these visits. That reports from the above counselors be submitted in sixty (60) days for review by the Court, and the matter be continued for review in sixty (60) days. Father and

mother to cooperate with Department on a psychological evaluation by Dr. Berman of father, Thomas Carter, and to follow all recommendations made thereto.

George N. DiMuro, Magistrate
Rhode Island Family Court

## Certification

I hereby certify and say that on the 7th day of June, I mailed a true copy of the within Decision, postage prepaid, to Gail Theriault, Esquire, DCYF Legal Department, 101 Friendship Street, Providence, RI 02903; Jefferson Melish, Esquire, 404 Main Street, Wakefield, RI 02879 and Francis Holbrook, Esquire, 122 Tauro Street, Newport, RI 02840.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
WASHINGTON COUNTY, S.C. FAMILY COURT

IN THE MATTER OF:

[redacted] CASSIDY F.C. NO.: 1999-01910-02

GUARDIAN'S REPORT

BACKGROUND

On or about January 24, 2001, DCYF filed and sought an ex-parte order of detention seeking custody of Cassidy [redacted] date of birth 1/20/01. The grounds for this relief were described in a "Summary of Facts to Substantiate Allegations of Abuse, Neglect and/or Dependency," attached and marked Exhibit A. Said relief was granted and the child, Cassid[redacted] was removed from the home of her biological parents, Joy and Thomas Carter, by way of a 48-hour hold on January 23, 2001. The ex-parte order was signed on January 24, 2001 and DCYF was granted temporary custody. DCYF has filed a neglect petition against both Joy and Thomas Carter, dated January 24, 2001, alleging as follows:

1. That the parents have failed to provide said child with a minimum degree of care, supervision or guardianship; and

2. That said child is without proper parental care and supervision (Exhibit B, attached).

The respondents, through counsel, sought a probable cause hearing regarding these allegations. Said hearing was concluded on May 24, 2001. Magistrate DiMuro has requested that the Guardian prepare a report addressing the issue as to where and with whom Cassidy [redacted] should be placed. From January 23, 2001 to the present, Cassidy [redacted] has been placed with relatives of the respondents. Joy Carter has had unlimited and unsupervised visitation and Thomas Carter has had supervised visitation.

DISCUSSION

A review of the Summary of Facts (Exhibit A) filed indicates that the Department sought removal of the child, Cassidy [redacted] due to the fact that Thomas Carter was scheduled to stand trial in February of 2001 for sexual molestation charges against his son, Anthony [redacted] date of birth 9/6/84. The Summary of Facts went on to state that Joy Carter had a history of substance abuse, depression and domestic violence and further that she had sexually molested her younger half brother and the case was indicated by CANTS. Certain information and evidence was developed subsequent to the filing of this Summary of Facts, by way of documentation provided and during the course of the Probable Cause hearing.

Thomas Carter was found not guilty by a Superior Court jury, Washington County on March 8, 2001 concerning two counts of child molestation filed against Thomas Carter by the State of Rhode Island. The allegations brought against Thomas Carter were the result of an investigation performed by DCYF on or about October 4, 1999 concerning Anthony [redacted] and his allegations that he was sexually molested approximately ten years ago when he was five years of age. These original allegations were the subject of a prior DCYF investigation. It was initially found by Child Protective Investigator, Ernest N. Watson that there was not a preponderance of evidence to support the same allegations and hence they are unfounded (Exhibit C July 1999 Finding).

DCYF thereafter conducted a subsequent investigation on October 4, 1999 concerning the same allegations. Investigative worker Marta Brandstromskelding concluded that there did exist a preponderance of evidence to support the allegations of "sexual molestation" and "sexual intercourse" and both were therefore indicated against Thomas Carter by DCYF.

As stated earlier, these same allegations were tried in the Superior Court on March 8, 2001 and the respondent, Thomas Carter, was found not guilty of the charges. (Exhibit D).

It is also important to note that the disclosure that Joy Carter had sexually molested her half brother was also information that was found to be unfounded by DCYF as a result of an evaluation performed by Dr. Allan Berman, by way of an Addendum Report dated February14, 2001 where he states:

> "It is my opinion, considering everything I know about this situation, that Joy is being honest and straight-forward about this incident and that the allegations are likely unfounded. It is common for individuals who have suffered sexual abuse to have dreams of this type." (Exhibit E).

Given the opinion of Dr. Berman, DCYF did not object to Joy Carter having unsupervised and unlimited visitation with Cassidy Carter.

At the probable cause hearing, Paul Ventura, who was employed by DCYF as a Child Protective Investigator testified on April 3, 2001 that he responded to the home of Cassid[redacted]n January 23, 2001 and that the child was healthy at the time he took the child into custody and that there was no evidence of neglect or abuse at that time.

Suzanne Zuffoletti, the Social Case Worker regarding this matter, testified that DCYF found the baby on January 23, 2001 to be healthy, well nourished and cared for. She further testified that Joy Carter is getting favorable reports from her counselors to include favorable substance abuse reports. Ms. Zuffoletti indicated that Joy Carter has been compliant with her case plan requirements concerning her other child in DCYF custody, Caleb [redacted] Ms. Zuffoletti further testified that there was no evidence to support the two allegations in the DCYF petition, i.e., that the parents have failed to provide said child with a minimum degree of care, supervision or guardianship or that the child is without proper parental care and supervision. Ms. Zuffoletti stated that the primary

reason the child is not being returned to Joy Carter is because of her concern for Thomas Carter and the indicated sexual molestation finding by DCYF.

Marta_Brandstromskelding testified that she is a Child Protective Investigator for DCYF and performed the investigation in October of 1999. Ms. Brandstromskelding testified as to the reasons supporting the sexual molestation charges being indicated against Thomas Carter. She also reviewed and incorporated into her findings an evaluation by James Moody (June through August of 1999) and the evaluation by Susan Howell, by way of a report dated July 30, 1999.

As alluded to earlier, Thomas Carter was found not guilty of the charges in the Superior Court on March 8, 2001. Ms. Brandstromskelding indicated that even though she was listed as a rebuttal witness, she did not testify at this trial. She further testified that she did not review the transcript of the testimony of Anthony [redacted] which was elicited during the trial in March of 2001. Ms. Brandstromskelding indicated that the transcript of the trial testimony of Anthony [redacted] was not sent to James Moody or Susan Howell, nor was the finding of not guilty given to these two individuals relative to any supplemental report or opinion.

Darleen Spears testified on behalf of the respondents and indicated that she has been working with Joy Carter since April of 1998 and that Joy has exhibited good parenting and mothering skills. Ms. Spears, in a summary report, provided a recent assessment of her observations of Joy Carter relative to the birth of Cassidy [redacted]. Ms. Spears indicated that on January 19, 2001, she did a home visit and Joy had all the essential baby care items needed to care for the infant. An unannounced visit was made of January 22, 2001 and there was no evidence of any neglect and that the baby appeared to be content. (See Exhibit F - reports).

Also attached and marked Exhibit G is a report dated from Jeanette R. Froncillo who has provided regular counseling sessions to Joy Carter and Thomas Carter. Ms. Froncillo

further indicates in her report that as to Thomas Carter, she hasn't "seen any indications that he wouldn't be able to correctly care for these children."

Also attached and marked as Exhibit H is a report dated November 22, 1999 of Dr. Peter J. Kosseff where it is stated Anthony [redacted] and Thomas Carter had nine counseling sessions since April 7, 1998 and in none of these meetings did Anthony ever suggest or accuse his father of any sexual misconduct.

Based on the evidence, there is nothing to demonstrate neglect of Cassidy [redacted] by either Joy Carter or Thomas Carter, The uncontradicted testimony was that the baby was healthy and well cared for during the six days that she was with Thomas and Joy Carter at the hospital and at home.

As to the sexual molestation allegations against Thomas Carter, a Superior Court jury found him not guilty of the charges. Furthermore, DCYF, in an initial investigation in July of 1999, failed to conclude that a preponderance of evidence existed concerning these allegations and unfounded the allegations.

Both Joy and Thomas Carter have attended regular counseling sessions with Jeanette Froncillo and have received a favorable report. Joy Carter has fully complied with her case plan concerning her other child, Caleb [redacted]. Sexual molestation allegations against Joy Carter were determined by DCYF to be unfounded following an evaluation with Dr. Berman.

In light of the above, the Guardian makes the following recommendation as to placement:

1. That Cassidy [redacted] be placed with her biological parents, Joy and Thomas Carter, at their home;

2. That Caleb [redacted] date of birth, 8/12/98, also be placed at the home of Joy and Thomas Carter as it is preferable that the two children reside together;

3. That both Joy and Thomas Carter continue in counseling with Jeanette Froncillo and cooperate with the counseling of Darleen Spears of Community Action and follow recommendations of these professionals;

4. That DCYF monitor the placement of these children and that Thomas Carter and Joy Carter cooperate with DCYF regarding the monitoring of the placement of the children;

5. That the matter be continued for ninety(90) days with up to date counseling reports being provided by both Jeanette Froncillo and Darleen Spears;

6. That Joy Carter continue to comply with her case plan concerning Caleb [redacted]

Respectfully submitted,

Francis S. Holbrook II (#3412)
Guardian

Certification

I hereby certify that on the 24th day of May, 2001 I did send by first class mail a true and accurate copy of the within to H. Jefferson Melish, Esq., 404 Main Street, Wakefield, Rhode Island 02879 and to Attorney Gail C. Theriault, State of Rhode Island and Providence Plantations, Department of Children, Youth and Families, Office of Legal Counsel, 101 Friendship Street, Providence, Rhode Island 02903.

1214/rg-6114/2